UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GEORGE THORSEN,

                      Plaintiff,

      -against-

COUNTY OF NASSAU, et al.,

                      Defendant.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**
CV 03-1022 (ARL)

**APPEARANCES:**

**LOUIS D. STOBER , JR.**
**LAW OFFICES OF LOUIS D. STOBER, JR. LLC**
Attorneys for Plaintiff
350 Old Country Road, Suite 205
Garden City, NY 11530

**JOHN CIAMPOLI**
**NASSAU COUNTY ATTORNEY**
by: DIANE C. PETILLO
Attorneys for Defendants
One West Street
Mineola, New York 11501

**LINDSAY, Magistrate Judge:**

      The plaintiff George Thorsen ("Thorsen") brought this action in February 2003 against the County of Nassau, the Nassau County Civil Service Commission (the "Commission"), and John Carway ("Carway") alleging, among other things, a violation of the First Amendment pursuant to 42 U.S.C. § 1983, constructive discharge, and defamation. A jury trial was held before the undersigned from October 26, 2009 to November 6, 2009. Following the trial, the court granted, in part, the defendants' Rule 50(b) and 59(a) motions. The court found that the jury's award for emotional distress was excessive and indicated that there would be a new trial on damages unless Thorsen agreed to a reduction for his emotional distress damages. Thorsen accepted the remittitur and has now submitted his application for attorneys' fees and costs.

In addition to the expenses he incurred during the litigation before this court, Thorsen seeks to be reimbursed for expenses in connection with a related state court action. Thus, an understanding of the history of the case is necessary to a resolution of the attorneys' fees application.

**BACKGROUND**

In brief summary, Thorsen was employed by the Nassau County Department of Probation from sometime in the 1970s to 2002. In 1999, Thorsen who was serving as Assistant to the Director of Probation, applied for the position of Director. Thorsen had political support from Joseph Mondello, the Nassau County Republican Party Chairman. The defendant Carway, who was the Deputy Director of Probation, was also interested in the position. Carway's application was supported by Nassau County Executive Thomas Gulotta. In June 2000, the Commission found Thorsen unqualified for the position. Thorsen appealed their decision and, on June 27, 2000, the Commission denied Thorsen's appeal. *See* Amended Complaint at ¶ 14.

**A. The Article 78 Proceeding**

In July 2000, Thorsen commenced an Article 78 proceeding, challenging the Commission's decision to disqualify him from consideration for the position of Director of Probation due to a purported lack of managerial experience. *Id.* at ¶15. Thorsen sought an order compelling the Commission to process his application for appointment. *Id.*[1] On February 16, 2001, the Nassau County Supreme Court granted the petition in its entirety finding that the Commission's determination was both arbitrary and capricious. *Id.* at ¶ 16. A judgment was entered on April 9, 2001. On May 24, 2001, the Commission appealed the decision and, on

---

[1] On January 31, 2011, while Thorsen was pursuing his Article 78 remedies, Carway was appointed Director of Probation.

December 16, 2002, the Appellate Division affirmed. The Commission then sought leave to appeal from the New York Court of Appeals.

**B. The Federal Action and the Motion to Dismiss**

On February 28, 2003, Thorsen filed his complaint in federal court. Thorsen alleged that he was denied due process under the Fourteenth Amendment and that his First Amendment right to free association had been violated. Thorsen also asserted claims under Article V, Section 6 of the New York State Constitution, unspecified sections of the New York State Civil Service Law, and for common law libel and slander. The defendants moved to dismiss.[2]

By order dated December 9, 2003, Judge Platt dismissed Thorsen's Fourteenth Amendment due process claim with prejudice finding that (1) he never had a property interest in the Director's position, (2) he had divested himself of a property interest in the Assistant's position when he resigned; and (3) even if he did have a property interest, he had received and was continuing to receive due process at the state court level. Judge Platt also found that the First Amendment claim had not been sufficiently pled and dismissed the claim with leave to re-file a second amended complaint, but not until the underlying state court action was resolved. Judge Platt stated, in this regard, that:

> State court litigation concerning the matters described above has yet to be resolved. The impression given at oral argument was that Plaintiff ultimately wishes this Court to force the Commission to grant him his appointment as Director of Probation. Yet this is not possible at the present time, for reasons of both federalism and judicial economy. The State courts may chose to issue such a mandamus to the Commission, but given the present posture of this case, the United States District Court lacks jurisdictional authority

---

[2] While the motion was pending, the Court of Appeals denied the Commission's request for leave to appeal the Article 78 decision.

>       to do so. . . .

The case was administratively closed on February 12, 2004.

## C. Thorsen's Subsequent State Court Proceeding

On April 20, 2004, Thorsen submitted a motion in the state court for an order of contempt for failure to comply with the state court judgment entered in April 2001. *See* Second Amended Complaint at ¶24. The Supreme Court denied the motion by order dated September 20, 2004. *Id.* at ¶25. On October 13, 2004, Thorsen appealed that decision. *Id.* at ¶26. On September 26, 2006, the Appellate Division affirmed the denial holding:

> several months before a judgment was even signed and entered in this proceeding, the position for which the petitioner was deemed qualified and for which the respondent was directed by judgment "to process the petitioner's application" was already filled . . . The petitioner never sought any injunctive relief as to that appointment. . . . As aptly noted by the Supreme Court, at this point, to compel the processing of the petitioner's application would be a futile gesture.
>
> Additionally, because the judgment did not direct the actual appointment of the petitioner, it cannot be shown that the respondent's failure to comply with it caused the petitioner to lose the benefits of such an appointment. Therefore, . . ., he is not entitled to "full back pay, . . . benefits and all other emoluments of employment."

Upon receipt of the Appellate Division decision, Thorsen sought to have the federal case re-opened.

## D. **Thorsen's Return to Federal Court.**

On November 27, 2006, Thorsen filed a Second Amended Complaint alleging that he was denied the position of Director of Probation for Nassau County in violation the First Amendment due to his affiliation with a particular faction of the Nassau County Republican Party. *See* Second Am. Compl. at ¶¶ 52-64. Thorsen also claimed that he was stripped of all job responsibilities and

subjected to a campaign of harassment and retaliation, including having an untrue story about him planted in the New York Times because of this political rift. *Id.* at ¶¶ 68-70. Thorsen further alleged that as a result of the defendants' actions, he suffered severe emotional distress and was constructively discharged. *Id.* at ¶¶ 75-84.

At the close of the trial, the defendants moved for judgment as a matter of law under Federal Rule of Civil Procedure 50. The court dismissed Thorsen's libel and slander claims and reserved decision with respect to the defendants' argument that they had not violated Thorsen's First Amendment rights when they denied him the Director position. *See* 11/4 Tr. at 775, 782-90. On November 9, 2009, the jury found in favor of Thorsen on both of his political affiliation claims and awarded him emotional distress damages in the amount of $1,500,000 and punitive damages against the defendant Carway in the amount of $500,000. The jury found against Thorsen on his constructive discharge claim. At a post-trial hearing, the court set aside the jury's finding that the failure to promote Thorsen to Director of Probation violated his rights based on the "policymaker" exception to First Amendment.

**E. The Attorneys' Fee Application**

Thorsen now seeks to recover $559,540.13 in attorneys' fees and cost incurred from May 15, 2000 to September 16, 2010. The defendants contend that (1) Thorsen is not entitled to reimbursement for hours expended before the commencement of the suit and while it was administratively closed; (2) Thorsen is only entitled to be reimbursed for the claims on which he prevailed; and (3) the rate for reimbursement being demanded is beyond the prevailing rate set by this district. For the reasons set forth below, the court awards Thorsen $457,408.50 in attorneys' fees and $3,922.10 costs.

# DISCUSSION

"In the United States, parties are ordinarily required to bear their own attorney's fees" unless Congress has authorized the award of attorney's fees to the prevailing party in a statute. *Buckhannon Bd. & Care Home, Inc., v. West Virginia Dept. of Health & Human Res.,* 532 U.S. 598, 602 (2001). 42 U.S.C. § 1988(b) is such a statute. It provides that:

> In any action or proceeding to enforce a provision of [Section 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorneys' fee as part of the costs.

42 U.S.C. § 1988(b). The defendants do not dispute that Thorsen is, at least in part, a prevailing party whose reasonable attorneys' fees and costs are compensable. The defendants do argue, however, that Thorsen is not entitled to reimbursement for the hours he expended in connection with the state court Article 78 proceeding.[3]

The Supreme Court has had a number of occasions to consider whether attorneys' fees can be awarded under the civil rights laws for time spent in state proceedings. In *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54 (1980), the Supreme Court held that 42 U.S.C. § 2000e-5 allows for the recovery of mandatory work done at the state and local levels to enforce Title VII. In contrast, in *Webb v. Dyer County Bd. of Educ.,* 471 U.S. 234 (1985), the Supreme Court held that 42 U.S.C. § 1988(b) does not provide for the recovery of attorneys' fees for services rendered in a local proceeding to enforce tenure rights created by state law even if the plaintiff obtained relief from his dismissal in a later civil rights action. Explaining the difference between these two holdings, the *Webb* court noted:

---

[3] In their motion papers, the defendants focus on the time expended after the case was administratively closed by Judge Platt. However, the same argument applies to the time expended in state court prior to the commencement of the federal case in 2003.

> *Carey* . . . arose under a statute that expressly requires the claimant
> to pursue available state remedies before commencing proceedings
> in a federal forum. There is no comparable requirement in § 1983,
> and therefore the reasoning in Carey is not applicable to this case.
> As we noted in *Smith v. Robinson,* 468 U.S. 992 (1984):
>
> 'The difference between *Carey* and this case is that in *Carey* the
> statute that authorized fees, Title VII, also required a plaintiff to
> pursue available state administrative remedies. In contrast, nothing
> in § 1983 requires that a plaintiff exhaust his administrative
> remedies before bringing a § 1983 suit.'
>
> Because § 1983 stands 'as an independent avenue of relief' and
> petitioner 'could go straight to court to assert it,' the School Board
> proceedings in this case simply do not have the same integral
> function under § 1983 that state administrative proceedings have
> under Title VII.

*Webb,* 471 U.S. at 240-241 (internal citations omitted).

A year after *Webb* was decided, the Supreme Court discussed whether attorneys' fees could be awarded under § 1988 for expenses incurred in connection with negotiations subsequent to the filing of an administrative complaint. *See North Carolina Dep't of Trans. v. Crest Street Comty Council,* 479 U.S. 6 (1986). Although the Supreme Court never reached the issue, the court did note:

> A court hearing one of the civil rights claims covered by § 1988
> may still award attorneys' fees for time spent on administrative
> proceedings to enforce the civil rights claim prior to litigation. *See
> Carey,* supra (so holding under identical language of Title VII).
> Moreover, even if the prior proceeding is not a "proceeding to
> enforce" one of the § 1988 civil rights laws, the 'discrete portion of
> the work product from the administrative proceedings' that 'was
> both useful and a type necessary to advance the civil rights litigation
> to the stage it reached before settlement' can be part of the
> attorneys' fees awarded under § 1988. *Webb*, *supra,* at 243 . . . .

Although the *North Carolina* court indicated that certain work product necessary to advance the civil rights litigation could be compensable, the Supreme Court cited to a portion of their decision

in *Webb* rejecting Webb's argument that he was entitled to fees for any work "reasonably related to the enforcement of [his] federal civil rights."

Applying these principles, Thorsen cannot be awarded attorneys' fees under § 1988 for time spent in connection with his state court proceeding. Thorsen's Article 78 proceeding challenged only the Commission's decision to disqualify him from the position of Director of Probation due to a purported lack of managerial experience, and thus, was not integrally related to nor did it advance his civil rights claims. Thorsen's characterization of the initial Article 78 proceeding as a necessary administrative remedy does not alter this result since he was not required to exhaust his administrative remedies before bringing the federal lawsuit. The same is true for the time Thorsen expended in state court pursuing the motion for contempt between 2003 and 2007. Thorsen vehemently argues that those hours are compensable since he did not voluntarily chose to discontinue the federal proceeding but was forced to do so. Thorsen acknowledges, however, that court's decision was based, in large measure, on Judge Platt's concern that full relief could be obtained in the state court. The federal court's decision to close the matter until the state court proceeding was concluded was based on principles of federalism and judicial economy, but was not mandated by statute so as to make it compensable. *See Vecchia v. Town of Hempstead,* 927 F. Supp. 579 (E.D.N.Y. 1996)(Mishler, J.)(attorney's fees expended in an Article 78 proceeding to vindicate plaintiff's rights under state law were not reimbursable under § 1988 notwithstanding the fact that the federal court remanded the case to the Town for a hearing); *see also Barrow v. Falck,* 977 F.2d 1100, 1104 (7th Cir. 1992)("When proceedings in state courts . . . are part of the 'enforcement of § 1983, then the time devoted to them is compensable. But rights under . . . civil service laws do not arise under the Constitution or federal statute, and efforts to secure their benefits in state forums are 'not proceedings to

enforce' § 1983"). Accordingly, Thorsen will not be compensated for the time expended in state court.

The court is also compelled to consider Thorsen's unsuccessful claims. *See Farrar v. Hobby,* 506 U.S. 103, 111-12 (1992). The defendants argue, in this regard, that Thorsen should not be compensated for the preparation of discovery motions that were denied.[4] With respect to the unsuccessful discovery applications, fee awards are not typically reduced because a party has failed to prevail on every contention. *See Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)(relevant query not "whether hindsight vindicates an attorneys' time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."). Accordingly, the fees will not be reduced as a result of the unsuccessful claims and motions. The court now turns to its analysis to the reasonableness of the rates being sought.

To calculate the presumptively reasonable fee, the court must first determine a reasonable hourly rate for the legal services performed. Reasonable hourly rates in attorneys' fee awards are determined with reference to a number of factors, including but not limited to those factors set out

---

[4]Interestingly, the defendants do not reference the fact that the plaintiff's due process claim, defamation claims and part of his First Amendment claim were dismissed. Notwithstanding the lack of argument, the court had reviewed the time spent on these unsuccessful claims. The determination of whether the hours should be reduced for the unsuccessful claims turns on "the degree to which the meritorious claims are clearly separable from the unsuccessful ones." *See Konits v. Valley Stream Cent. High Sch. Dist.,* 2010 U.S. Dist. LEXIS 50870 *7-8 (E.D.N.Y. May 19, 2010)(citing *McCann v. Coughlin,* 698 F.2d 112, 130 (2d Cir. 1983)). Here, the court finds that because the unsuccessful claims involved a common core of facts and related legal theories, the hours cannot be divided. *See Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983).

in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).[5]  *See Arbor Hill*, 522 F.3d at 186-87, 190.  Moreover, the "presumptively reasonable fee" standard uses the hourly rates employed in the district in which the reviewing court sits, unless the party seeking fees "persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009) (internal quotation omitted).  Finally, the fee application must be determined using *current* Eastern District rates.  The Supreme Court held in *Missouri v. Jenkins,* 491 U.S. 274 (1989), that "[a]n adjustment for delay in payment is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee," because "compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation – is not equivalent to the same dollar amount received reasonably promptly as the legal services are preformed." *Id.* at 283-84.  Citing to the language above, the Second Circuit held that to "adjust[] for delay," the "rates used by the court should be 'current rather than historic hourly rates.'" *Lochren v. County of Suffolk,* 2009 WL 2778431 (2d Cir. Sept. 3, 2009).

Here, Thorsen seeks an award based on the following hourly rates: $450 for Louis Stober, Jr. (26 years of experience), $300 for Shiela Hatami (5 years of experience) and Danielle Nucci

---

[5]The *Johnson* factors, as articulated by the court in *Arbor Hill*, are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  522 F.3d at 186, n.3 (citing *Johnson,* 488 F.2d at 717-19).

(11+ years of experience[6]), $350 for Anthony Giustino (21 years of experience), and $100/$90 for paralegals/secretaries. The defendants incorrectly contend these rates are "grossly over-scaled" for the Eastern District. *See GMG Transwest Corp v. PDK Labs, Inc.,* 2010 U.S. Dist. LEXIS 108581 (E.D.N.Y. Oct. 12, 2010)(awarding partners $450 and $400 based on number of years of experience); *Lochren v. County of Suffolk,* 2010 U.S. Dist. LEXIS 28288 (E.D.N.Y. Mar. 23, 2010)(awarding partner with 40 years of experience $450, partner with 20 years experience $425); *Luca v. County of Nassau*, No. 04-CV-4898, 2010 U.S. Dist. LEXIS 5867 (E.D.N.Y. Jan. 25, 2010) (awarding partner with 25 years experience $400, and partner with 14 years $375); *Morgenstern v. County of Nassau*, 2009 U.S. Dist. LEXIS 116602 (E.D.N.Y. Dec. 15, 2009) (awarding $ 400 per hour in a § 1983 case). The defendants also argue that "Mr. Stober falls short of the benchmark" justifying awards at higher rates. The court is utterly perplexed by the defendants' suggestion that Mr. Stober cannot compare himself to attorneys like Mr. Brewington. Mr. Stober is a well known labor and employment attorney with 26 years of experience, who has appeared before this court numerous times. There is no question that Thorsen benefitted greatly from having a skilled counsel with significant experience in employment civil rights cases represent him. However, the court believes that the current rate for an attorney with Mr. Stober's experience should be $425. The court finds that the balance of the hourly rates are comparable with rates currently awarded in this district for attorneys with similar experience.

As required by *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983), Thorsen's counsel has submitted contemporaneous billing records setting forth the date and amount of time when services were rendered, along with the name of the

---

[6]The plaintiff has not specified when Ms. Nucci graduated but she has been employed since 2000.

attorney and a description of the services performed and the court finds that the time expended was reasonable. *See* Gilly Decl., Ex. D. As such, Thorsen will be awarded the following for legal services rendered:

| **Attorneys** | **Rates** | **Hours** | **Sub-Total** |
|---|---|---|---|
| Louis Stober | $ 425 | 602.75 | $ 256,168.75 |
| (Travel)[7] | $ 212.5 | 9.25 | $ 1,965.25 |
| Shiela Hatami | $ 300 | 654.50 | $ 196,350.00 |
| (Travel) | $ 150 | 9.25 | $ 1,387.50 |
| Danielle Nucci | $ 300 | 0 | $ 0.00 |
| (Travel) | $ 150 | 4.25 | $ 637.50 |
| Anthony Giustino | $ 350 | 0 | $ 0.00 |
| Paralegals | $ 100 | 9.00 | $ 900.00 |
| Secretaries | $ 90 | 0 | $ 0.00 |
| **Total:** | | | **$ 457,408.50** |

Thus, the court recommends an award of attorneys' fees in the amount of $457,408.50.[8]

**V. Costs**

Thorsen also seek costs in the amount of $ 7,542.82[9] for the relevant time period. Included in the general category of expenses are the filing fee and fees for process servers, court reporters, witness/expert fees, and transportation for experts. Specifically, the plaintiff seeks to be reimbursed for the following items:

| **Category** | **Amount** |
|---|---|
| Filing fee | $ 150.00 |
| Process servers | $ 265.00 |
| Expert/Witness Fees | $ 3,487.00 |
| Court reporters | $ 3,027.10 |

---

[7]Travel will be reimbursed at 50%.

[8]This award include the supplemental time set forth in the plaintiff's reply papers.

[9]This amount includes the additional $480 witness fee included in the reply declaration.

12

| | |
|---|---|
| Transportation | $ 613.72 |

"The Second Circuit has held that reasonable out-of-pocket disbursements ordinarily charged to clients are recoverable." *Vilkhu v. City of New York,* 2009 U.S. Dist LEXIS 73696 *64 (E.D.N.Y. Jun. 25, 2009). These include expenditures for filing fees, process servers, subpoena/witness fees, and transcripts are routinely recoverable and will be awarded on this case. *See Bobrow Palumbo Sales, Inc. v. Broan-Nutone,* 2008 U.S. Dist. LEXIS 35195 *26 (E.D.N.Y. April 30, 2008)(citing *Simmons v. N.Y. City Transit Auth.,*2008 U.S. Dist. LEXIS 16949 *22-23 (E.D.N.Y. Mar. 4 2008)). However, certain costs associated with routine office overhead and cost associated with expert witness fees are not recoverable. *Id.* (citing *Wilder v. Bernstein*, 975 F. Supp. 276 (S.D.N.Y. 1997). The court lacks authority to shift expert witness fees to the losing party in a section 1983 case, and thus, regardless of whether they were in fact experts, the court cannot reimburse the plaintiff for Dr. Bayer's witness fee of $2500 or Mr. Griffith's lost wages, air fare and car rental. *See West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 102 (1991). Finally, the court finds that the costs should not be reduced due to the fact that the plaintiff did not succeed on all of his claims. As the court has preciously noted, the "plaintiff's successful and unsuccessful claims are factually intertwined," and thus, an "across-the-board reduction in costs . . . is not appropriate here." *Id.* In conclusion, the court awards costs in the amount of $3,922.10

## CONCLUSION

For the reasons set forth above, the plaintiff is awarded $457,408.50 in attorneys fees and $3,922.10 in costs, for a total award of $461,330.60. The clerk of the court is directed to enter an amended judgment to reflect this award.

Dated: Central Islip, New York  
      March 17, 2011

SO ORDERED:  
_____/s/_____  
Arlene Rosario Lindsay  
United States Magistrate Judge